1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11

12  JOSE MADRIGAL,                    CV 19-5041-RSWL-PLAx

13            Plaintiff,              **ORDER re: Motion for**
                                      **Partial Summary Judgment**
14       v.                           **as to Third Cause of**
                                      **Action [40]; Motion for**
15  UNITED STATES,                    **Order to Limit Ad Damnum**
                                      **[41]; Motion for Order**
16            Defendant.              **Regarding Direct by**
                                      **Declaration & Order of**
17                                    **Witnesses [42]**

18

19       Plaintiff Jose Madrigal ("Plaintiff") filed this

20  Action [1] on June 10, 2019, against Defendant United

21  States, asserting claims of (1) negligence per se, (2)

22  negligence, and (3) negligent hiring, retention,

23  supervision, or training.  The Action arises out of an

24  automobile accident involving Plaintiff and a United

25  States Postal Service ("USPS") delivery truck.

26       Presently before the Court are three motions filed

27  by the United States: (1) Motion for Partial Summary

28

1

Judgment [40] ("Partial MSJ"); Motion for Order to Limit Ad Damnum ("Motion to Limit Ad Damnum") [41]; and (3) Motion for Order Regarding Direct by Declaration and Order of Witnesses ("Motion for Direct by Declaration") [42].  The United States has also filed alongside its Motion for Direct by Declaration a request regarding the presentation of witnesses ("Request Regarding Witness Presentation").  Having reviewed all papers submitted pertaining to this Motion, the Court **NOW FINDS AND RULES AS FOLLOWS**: the Court **GRANTS** the Partial MSJ, **DENIES** the Motion to Limit Ad Damnum, **GRANTS** the Motion for Direct by Declaration, and **GRANTS** the Request Regarding Witness Presentation.

## I.  BACKGROUND

Plaintiff alleges that, on June 16, 2017, he sustained personal injuries from a motor vehicle accident with a USPS delivery truck.  Compl. ¶¶ 1, 20, ECF No. 1.  On July 13, Plaintiff filed an administrative claim with the USPS for damages related to the accident, seeking one million dollars for personal injuries.[1]  Id. ¶ 10.  The USPS did not approve Plaintiff's personal injury claim.  Id. ¶ 12.

Plaintiff initiated [1] this Action on June 10, 2019.  On October 31, 2019, USPS denied Plaintiff's administrative claim for personal injuries.  Following

---

[1] Plaintiff also filed a claim with USPS for property damages, which he settled in 2017.  Id. ¶ 11.

1  the parties' stipulation extending time to answer [17],
2  the United States filed its Answer [21] on December 23,
3  2019.

4      Since the subject motor vehicle accident, and
5  during the pendency of this Action, Plaintiff has
6  continued to undergo physical therapy and medical
7  treatment, including epidural steroid injections and
8  surgery.  See Decl. of Thomas J. Conroy in Supp. of
9  Pl.'s Opp'n ("Conroy Decl.") Exs. A-E, ECF No. 46-1.

10     On March 29, 2021, the United States filed its
11 Partial MSJ [40], Motion to Limit Ad Damnum [41], and
12 Motion for Direct by Declaration [42].  Plaintiff
13 untimely opposed [46, 47] the Motion to Limit Ad Damnum
14 and the Motion for Direct by Declaration.  The United
15 States' Partial MSJ stands unopposed.  A bench trial is
16 set for May 25, 2021.

17                  **II.  DISCUSSION**
18 **A.  Motion for Partial Summary Judgment**

19     The United States argues that dismissal of
20 Plaintiff's claim for negligent hiring, retention,
21 training, and supervision is proper because "district
22 courts lack jurisdiction over discretionary decisions
23 made by federal agencies . . . under the discretionary
24 function exception to the [Federal Tort Claims Act]."
25 Mot. for Partial Summ. J. 2:5-12, ECF No. 40.  The Court
26 agrees.

27     While the Federal Tort Claims Act ("FTCA") serves
28 as a limited waiver of the United States' sovereign

                              3

immunity, the FTCA's discretionary function exception
limits governmental liability.  See Vickers v. United
States, 228 F.3d 944, 948-50 (9th Cir. 2000).  The
statutory discretionary function exception is
inapplicable to:

> [a]ny claim based upon an act or omission of an
> employee of the [United States], exercising due
> care, in the execution of a statute or
> regulation . . . or based upon the exercise or
> performance or the failure to exercise or
> perform a discretionary function or duty on the
> part of a federal agency or an employee of the
> [United States], whether or not the discretion
> be abused.

28 U.S.C. § 2680(a).  The Ninth Circuit has held that
"decisions relating to the hiring, training, and
supervision of employees usually involve policy
judgments of the type Congress intended the
discretionary function exception to shield." Vickers v.
United States, 228 F.3d 944, 950 (9th Cir. 2000); see
also Gager v. United States, 149 F.3d 918, 921-22 (9th
Cir. 1998) (applying the discretionary function
exception because "[t]he decision not to provide
universal training and supervision . . . involved
judgment or choice grounded in social, economic, and
political policy").

Because Plaintiff's claim falls squarely within the
discretionary function exception to the FTCA, the Court
**GRANTS** the United States' Partial MSJ.[2]  See, e.g., A.M.

_____

[2] Plaintiff filed a Proposed Pretrial Conference Order [55]
and Memorandum of Contentions of Fact and Law [50].  While

1  v. United States, No. 19-CV-1108 TWR (AGS), 2020 WL

2  6276021, at *4-6 (S.D. Cal. Oct. 23, 2020) (concluding

3  that plaintiff's claim for negligent retention,

4  supervision, and hiring was barred by the discretionary

5  function exception to the FTCA); Vardiman v. United

6  States, No. 4:17CV2358 RLW, 2020 WL 109464, at *6 (E.D.

7  Mo. Jan. 9, 2020) (same); Smith v. United States, No.

8  1:17-CV-00085-GNS-HBB, 2018 WL 6308736, at *4 (W.D. Ky.

9  Dec. 3, 2018) (same); White v. Soc. Sec. Admin., 111 F.

10 Supp. 3d 1041, 1051 (N.D. Cal. 2015) (same); West v.

11 United States, No. EDCV 15-01243-JLS (PLAx), 2016 WL

12 1576382, at *3-5 (C.D. Cal. Apr. 11, 2016) (same).

13 **B.   Motion for Order to Limit Ad Damnum**

14      28 U.S.C. § 2675(b) provides that, after an

15 administrative claim is denied, or six months pass since

16 the administrative claim was presented, a claimant may

17 file an action against the United States for an amount

18 not to exceed the amount of the administrative claim.

19 There are two exceptions to the  statutory limit on

20 damages: "(1) where the plaintiff proves 'newly

21 discovered evidence not reasonably discoverable at the

22 time of presenting the claim to the federal agency,' or

23 (2) where the plaintiff identifies and proves

24 'intervening facts' justifying a higher award.'"  Wilcox

25 v. United States Postal Serv. Inc, No. 8:17-cv-00224-

26 Plaintiff states in those documents his intention to proceed at
27 trial with his two other causes of action, he makes no mention of
   the claim for negligent hiring, retention, training, and
28 supervision.

5

JLS-KES, 2019 WL 4138007, at *3 (C.D. Cal. May 3, 2019)
(quoting <u>Salcedo-Albanez v. United States</u>, 149 F. Supp.
2d 1240, 1243 (S.D. Cal. 2001)).  "The ultimate question
is whether 'the full extent of [Plaintiff's] injuries
[was] reasonably foreseeable' when the administrative
claim was filed."  <u>Id.</u> (quoting <u>Richardson v. United
States</u>, 841 F.2d 993, 999 (9th Cir. 1988)).

The subject automobile accident occurred on June
16, 2017.  Compl. ¶ 20.  Plaintiff was thereafter
treated at Long Beach Memorial and was diagnosed with a
head injury, cervical strain, and contusion of his left
thigh.  <u>See</u> Conroy Decl. Ex. A, at 7-8, ECF No. 46-2.
He was instructed to follow up with his primary care
doctor.  <u>Id.</u> at 13.  On July 13, 2017, Plaintiff filed
his administrative claim with the USPS for one million
dollars for "bodily injury to his head, neck, back and
legs."  Decl. of Fatimargentina Lacayo Ex. B, at 13, ECF
No. 41-1.

After filing his administrative claim with the
USPS, Plaintiff began physical therapy in August 2017.
<u>See</u> Conroy Decl. Ex. D, ECF No. 46-5.  He visited a
series of doctors over the next two years and was given
epidural steroid injections.  <u>See</u> Conroy Decl. Exs. B-D.
Following a medical visit on September 11, 2018, Dr.
Binder recommended a lumbar epidural steroid injection
and additional physical therapy.  Conroy Decl. Ex. D.
He opined that "there is no need for spine surgery at
this time."  <u>Id.</u>  Approximately one year later, on

September 24, 2019, Dr. Binder performed a laminectomy, discectomy, and fusion at Plaintiff's lower back.  Id.; see also Pl.'s Opp'n to Def.'s Mot. to Limit Ad Damnum ("Opp'n to Ad Damnum") 2:3-6, ECF No. 46.  Plaintiff avers that he continues to experience pain in his neck and lower back.  Conroy Decl. ¶ 9.

The United States argues that, because Plaintiff's need for surgery was reasonably discoverable at the time he filed his administrative claim for one million dollars, Plaintiff cannot seek more than one million dollars.  See generally Mot. to Limit Ad Damnum, ECF No. 41; see also 28 U.S.C. § 2675(b) (generally limiting a plaintiff's recovery to "the amount of the claim presented to the federal agency").  Further, the United States contends that all of Plaintiff's medical diagnoses and treatment occurred before the USPS denied his administrative claim on October 31, 2019, meaning that Plaintiff could have amended his claim when he learned of the ongoing treatment.  Mot. to Limit Ad Damnum 6:27-7:7.  On the other hand, Plaintiff argues[3] that his medical treatment and surgery constitute evidence not reasonably discoverable at the time of presenting his administrative claim.  Opp'n to Ad Damnum 5:27-6:4.  He argues that the considerable development of his injuries was not foreseeable, so he should be

---

[3] Plaintiff's opposition was untimely.  While the Court may consider the failure to file a timely opposition consent to the granting of the motion, see Local Rule 7-12, the Court nonetheless proceeds to the merits.

1   permitted to seek an amount in excess of his

2   administrative claim.  Id. at 4:15-5:18, 7:3-4.

3      Thus, the United States' Motion to Limit Ad Damnum

4   presents two issues: whether the extent of Plaintiff's

5   injuries was reasonably foreseeable at the time he filed

6   his administrative claim, and whether Plaintiff's

7   failure to amend his administrative claim prior to final

8   agency action precludes a damages award in excess of his

9   administrative claim.  The Court addresses these issues

10  in turn.

11     1.  Foreseeability of Plaintiff's Medical Expenses

12     Courts in the Ninth Circuit have employed the

13  "reasonably foreseeable" test in determining whether a

14  claimant may initiate an action for a sum in excess of

15  the amount of the administrative claim.  See, e.g.,

16  Wilcox, 2019 WL 4138007, at *3; Resnansky v. United

17  States, No. 13-cv-05133-DMR, 2015 WL 1968606, at *3-4

18  (N.D. Cal. May 1, 2015); Richardson, 841 F.2d at 999.

19  That is, "a plaintiff cannot seek damages beyond the

20  amount set forth in the administrative claim if the

21  injuries were 'reasonably foreseeable' at the time the

22  claim was filed."  Resnansky, 2015 WL 1968606, at *3

23  (citing Richardson, 841 F.2d at 999).

24     "[W]hile courts do not charge a claimant with

25  knowing what the physicians could not tell him, the

26  information must not have been discoverable through the

27  exercise of reasonable diligence."  Wilcox, 2019 WL

28  4138007, at *3 (internal citation omitted) (quoting Low

<u>v. United States</u>, 795 F.2d 466, 470 (5th Cir. 1986)).  A claimant need not know the precise extent of his injury upon filing an administrative claim, but "[d]iagnoses which are no more than cumulative and confirmatory of earlier diagnoses are neither 'newly discovered evidence' nor 'intervening facts.'"  <u>Wilcox</u>, 2019 WL 4138007, at *3 (quoting <u>Reilly v. United States</u>, 863 F.2d 149, 171 (1st Cir. 1988)).  This inquiry "is inherently fact-specific."  <u>Wilcox</u>, 2019 WL 4138007, at *3 (quoting <u>Resnansky</u>, 2015 WL 1968606, at *4).

The Court concludes that the extent of Plaintiff's injuries was not reasonably foreseeable at the time he filed his administrative claim.  Plaintiff's initial diagnosis consisted of a head injury, cervical strain, and contusion of his left thigh.[4]  Conroy Decl. Ex. A, at 7-8.  But none of these diagnoses implicate the procedures Plaintiff would eventually undergo—namely, a laminectomy, a discectomy, and fusion at levels L4-L5 and L5-S1.  It was not until Plaintiff underwent an MRI in August 2017—one month after filing his administrative claim—that the extent of his injuries came to light.  <u>See</u> Conroy Decl. Ex. B, at 2.  It was also at the August 2017 visit to Dr. Le that the prospect of surgery emerged.  <u>See</u> <u>id.</u>

Because the increased amount that Plaintiff seeks was not reasonably discoverable at the time of

---

[4] Plaintiff was prescribed Motrin and Flexeril and instructed to return four weeks later.  <u>Id.</u> at 33.

presenting his administrative claim, Plaintiff may seek damages in excess of one million dollars.  See 28 U.S.C. § 2675(b).

2.  Plaintiff's Election Not to Amend the Administrative Claim

The United States advances the argument that Plaintiff should not be able to seek more than the amount sought in his administrative claim because Plaintiff could have amended his claim at any time before it was denied by the USPS in October 2019.  See Mot. to Limit Ad Damnum 6:26-7:7; Reply of Def. United States in Supp. of Mot. to Limit Ad Damnum 3:5-8, ECF No. 53.  The Court finds this argument unavailing.

First, although USPS's failure to issue a decision was not considered a final denial of Plaintiff's administrative claim until Plaintiff filed this Action, § 2675(c) directs district courts to evaluate the existence of new facts from the time the claim was presented, not the time of final agency action.  See 28 U.S.C. § 2675(b).  That is, Plaintiff may properly seek a sum in excess of the amount sought in his administrative claim if "the increased amount is based upon newly discovered evidence not reasonably discoverable *at the time of presenting the claim to the federal agency*."  28 U.S.C. § 2675(b) (emphasis added).  As discussed above, since the time Plaintiff presented

his claim[5] in July 2017, new facts arose permitting Plaintiff to seek a sum in excess of the amount in the administrative claim.

Second, 28 C.F.R. § 14.2(c) provides that an administrative claim under Section 2675 "may be amended by the claimant at any time prior to final agency action or prior to the exercise of the claimant's option under 28 U.S.C. § 2675(a)."  Section 14.2(c) is notably couched in permissive terms.  It does not require a claimant to amend his claim.

Finally, to require a claimant to amend his claim at any time prior to final agency action would contravene the claimant's option under 28 U.S.C. § 2675(b) to initiate an action after six months based on the agency's failure to issue a final denial.  To be sure, some district courts have reached a contrary result by holding that a plaintiff must amend an administrative claim prior to final agency action to recover more than the amount sought in the initial claim.  See, e.g., Beal v. United States, No. CV 05-

---

[5] A claim shall be deemed to have been presented when a Federal agency receives from a claimant . . . an executed Standard Form 95 . . . accompanied by a claim for money damages in a sum certain for . . . personal injury . . . alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

1278-AHM(AJWx), 2007 WL 9706707, at *3 (C.D. Cal. Mar. 29, 2007) (citation omitted) (stating that a plaintiff's contention that he can sue in federal court for more than the amount sought in the administrative claim "must fail inasmuch as the plaintiff had the right at any time prior to final agency action to amend the claim"); Indus. Indem. Co. v. United States, 504 F. Supp. 394, 399 (E.D. Cal. 1980) (same).  To the extent those cases yield a different result, the Court finds them unpersuasive and contrary to the plain language of 28 U.S.C. § 2675 and 28 C.F.R. § 14.2(c).  See Diawara v. United States, No. 18-3520, 2020 WL 1151162, at *3 (E.D. Pa. Mar. 9, 2020) (holding that the plaintiff, although she could have amended her claim, "had no duty to amend her claim prior to the USPS issuing its final decision"); see also Robison v. United States, 746 F. Supp. 1059, 1063 (D. Kan. 1990) (stating that the relevant date under § 2675(b) is the time at which plaintiff submitted his administrative claim, not the date of final agency action).

    For these reasons, the Court **DENIES** the United States' Motion to Limit Ad Damnum.

C.  **Motion for Direct by Declaration**

    Federal Rule of Civil Procedure 43(a) requires that witnesses' testimony be "taken in open court unless a federal statute, the Federal Rules of Evidence, these rules, or other rules adopted by the Supreme Court provide otherwise."  Local Rule 43-1 further provides

that "the judge may order that the direct testimony of a witness be presented by written narrative statement subject to the witness' cross-examination at the trial." Consistent with the mandate of Federal Rule of Civil Procedure 43(a) that the testimony be taken in open court, Local Rule 43-1 states that any "written, direct testimony shall be adopted by the witness orally in open court, unless such requirement is waived."

The United States requests that the Court order direct testimony to be occasioned by written declarations in lieu of oral testimony. See generally Mot. Regarding Direct by Decl., ECF No. 42. The United States insists that "[t]rial by direct declaration will substantially shorten the length of the bench trial, encourage the parties to eliminate cumulative and non-essential witnesses, reduce the cost and time expense of bring lay and expert witnesses to trial, and assist the Court in examining the medical issues related to Plaintiff's damages claims." Id. at 2:24-28.

In opposition, Plaintiff argues[6] that, because the United States opposes both liability and damages, it is critical that witnesses provide live oral testimony. Pl.'s Opp'n to Def.'s Mot. Regarding Direct 1:26-2:3, ECF No. 47. He further argues that live oral testimony is necessary for the Court to assess witness

---

[6] The Court may properly deem Plaintiff's untimely Opposition [47] consent to granting of the motion. See Local Rule 7-12.

13

1    credibility.  Id. at 1:19-25.

2         The Court concludes that direct testimony by

3    written narrative statement is appropriate in this case.

4    Local Rule 43-1 expressly allows this, and the Court is

5    not convinced that the factual questions at issue are

6    "not readily ascertainable from the declarations of

7    witnesses."  United Com. Ins. Serv., Inc. v. Paymaster

8    Corp., 962 F.2d 853, 858 (9th Cir. 1992).  Moreover, the

9    Court can adequately assess witness credibility through

10   written declarations as well as during live cross-

11   examination and redirect examination.  See In re Adair,

12   965 F.2d 777, 780 (9th Cir. 1992) (upholding the

13   bankruptcy court's standard procedure requiring direct

14   testimony by written declaration where "[w]itness

15   credibility initially was established through factual

16   consistency in the declarations" and the judge "had the

17   opportunity to observe the declarants' demeanor and to

18   gauge their credibility during oral cross-examination

19   and redirect examination"); see also Kuntz v. Sea Eagle

20   Diving Adventures Corp., 199 F.R.D. 665, 667 (D. Haw.

21   2001) (stating that "[t]he accuracy of each witness

22   statement is assured by the declarant's review and

23   signing of the statement on penalty of perjury").

24        The use of written testimony in this case is

25   compelled by Federal Rule of Evidence 611(a), which

26   provides that "[t]he [C]ourt should exercise reasonable

27   control over the mode and order of examining witnesses

28   and presenting evidence so as to (1) make those

                                14

procedures effective for determining the truth; [and] (2) avoid wasting time . . . ."  Further, the Ninth Circuit has touted "[t]he use of written testimony '[a]s an accepted and encouraged technique for shortening bench trials.'"  <u>In re Adair</u>, 965 F.2d 777, 779 (9th Cir. 1992) (citation omitted).

Accordingly, the Court **GRANTS** the United States' Motion for Order Regarding Direct by Declaration.

**D.   <u>Request Regarding Witness Presentation</u>**

The United States proposes that the parties "jointly file a witness list indicating (i) the order in which their witnesses will be called to testify and (ii) time estimates for cross-examination and re-direct of each witness."  Mot. to Limit Ad Damnum 4:7-13. Plaintiff does not oppose.  Opp'n to Ad Damnum 3:8-9. The Court therefore **GRANTS** the United States' Request Regarding Witness Presentation.

**III.   CONCLUSION**

Based on the foregoing, the Court **GRANTS** the United States' Partial MSJ; **DENIES** the Motion to Limit Ad Damnum; **GRANTS** the Motion for Direct by Declaration; and **GRANTS** the Request Regarding Witness Presentation.

**IT IS SO ORDERED.**

DATED: April 27, 2021        <u>    /s/ Ronald S.W. Lew    </u>
                             **HONORABLE RONALD S.W. LEW**
                             Senior U.S. District Judge

15