'O'

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JOSE MADRIGAL,

        Plaintiff,

   v.

UNITED STATES,

        Defendant.

CV 19-5041-RSWL-PLA

**ORDER AND FINDINGS OF FACT & LAW**

Complaint Filed: June 10, 2019
Trial Date: May 25-26, 2021

    Plaintiff Jose Madrigal ("Plaintiff") initiated this Action against Defendant United States ("Defendant") for injuries arising out of a collision (the "Collision") between Plaintiff's vehicle and a United States Postal Service mail delivery truck.  On May 25 and May 26, 2021, the Court conducted a bench trial.[1]  Having considered the evidence, the parties'

_____

[1] On April 27, 2021, the Court ordered [69] the parties to submit declarations in lieu of oral live testimony for purposes of direct examination.

objections to the evidence, the credibility of the trial witnesses, and both parties' arguments at trial, the Court issues the following findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## I.   FINDINGS OF FACT

The intersection of Baltic Avenue and Dominguez Street lies in Carson, California.  Ex. 3, at 4; Ex. 115-7.  Baltic Street is a residential roadway that runs north and south.  Ex. 3, at 4; Ex. 115-7.  Dominguez Street is a business roadway that runs east and west. Ex. 3, at 2.  The intersection of Baltic and Dominguez has no traffic lights.  Ex. 3, at 4; Ex. 115-7; Ex. 52, at 27:2-6.

On June 16, 2017, United States Postal Service ("USPS") employee Asia Crowfield was driving a USPS mail truck on an unfamiliar route.  Ex. 51, at 38:1-10.  Ms. Crowfield was traveling northbound on Baltic Avenue, approaching the intersection of Baltic Avenue and Dominguez Street.  Ex. 3, at 5; Ex. 115-9.  At the same time, Plaintiff was driving his twelve-wheel semi-truck eastbound on Dominguez Street.  ¶¶ 5-6.  Ms. Crowfield attempted to make an unprotected left turn from Baltic Avenue into the westbound lane of Dominguez Street.  Ex. 49 ¶ 5.  Although Plaintiff saw Ms. Crowfield's mail truck pull out from Baltic Avenue, he was unable to stop his truck.  Id.  Ms. Crowfield's vehicle struck the passenger side of Plaintiff's truck.  Id. ¶ 6; Ex. 3, at

5-6; Ex. 115-9, 115-11.  Plaintiff's feet hit the floor of the truck, and his head hit the driver's side door frame.  Ex. 49 ¶ 6.

In precipitating the Collision, Ms. Crowfield violated California Vehicle Code § 21801(a), which reads as follows:

> [t]he driver of a vehicle intending to turn to the left or to complete a U-turn upon a highway . . . shall yield the right-of-way to all vehicles approaching from the opposite direction which are close enough to constitute a hazard at any time during the turning movement, and shall continue to yield the right-of-way to the approaching vehicles until the left turn or U-turn can be made with reasonable safety.

Ms. Crowfield was the sole cause of the Collision.  Ex. 3, at 2, 6; Ex. 52, at 30:5-9; Ex. 115-3, 115-11.

Plaintiff has undergone significant medical treatment in relation to resultant injuries to his lumbar spine, including emergency room services, magnetic resonance imaging ("MRI") scans, physical therapy sessions, epidural steroid injections, physician consultations, and a transforaminal lumbar interbody fusion ("TLIF").  Ex. 45 ¶¶ 8-15; Ex. 46 ¶¶ 11-15.  In the future, Plaintiff is likely to require additional care in the form of medical consultations, medications, and interventional pain management.  Ex. 46 ¶ 25; Ex. 158 ¶¶ 36, 38.

Plaintiff works as a truck driver five days per

week for approximately ten to twelve hours per day.  Day 2 Tr. 17:17-25; Ex. 49 ¶ 12.  He is reasonably expected to earn $29,627.75 annually, or $569.76 per week.[2]  Ex. 24.  As a result of the Collision, Plaintiff missed twelve weeks of work, including four weeks after the Collision and eight weeks following his TLIF.  Ex. 49 ¶ 18.  However, the Collision has not had a material effect on Plaintiff's ability to perform his job, and no physician has placed any work-related restriction on him.  Day 2 Tr. 18:19-19:3.

Plaintiff's injuries have hindered his ability to engage in certain hobbies, including hiking with family and traveling.  Ex. 14; Ex. 49 ¶¶ 22, 36.  Accustomed to life as the family breadwinner, Plaintiff feels more like a burden after the Collision.  Ex. 49 ¶ 35.

## II.   CONCLUSIONS OF LAW

Plaintiff asserts a single claim for negligence against Defendant by way of the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1).  In California,[3] the elements of negligence are duty, breach of duty, causation, and damages.  Carrera v. Maurice J. Sopp & Son, 177 Cal. App. 4th 366, 377 (2009) (citations omitted).

---

[2] The $29,627.75 figure is an average of Plaintiff's annual income as a truck driver from the years 2011 to 2019, excluding 2014, for which no tax returns were provided.

[3] Because the Collision occurred in California, California law applies to Plaintiff's claims.  See 28 U.S.C. § 1346(b)(1) (creating governmental liability "in accordance with the law of the place where the act or omission occurred").

4

## A. __Liability__

Negligence per se is an evidentiary doctrine, under which the "violation of a statute gives rise to a presumption of negligence in the absence of justification or excuse."  Ramirez v. Nelson, 44 Cal. 4th 908, 918 (2008).  To establish negligence per se, a plaintiff must establish: "(1) the defendant violated a statute, ordinance, or regulation; (2) the violation proximately caused the injury; (3) the injury resulted from an occurrence that the enactment was designed to prevent; and (4) the plaintiff fits within the class of persons for whose protection the enactment was adopted."  Coppola v. Smith, 935 F. Supp. 2d 993, 1017 (E.D. Cal. 2013) (citing Cal. Evid. Code § 669).

Because Ms. Crowfield violated California Vehicle Code § 21801(a) and thereby caused Plaintiff's injuries, she was presumptively negligent.  Moreover, because Ms. Crowfield was acting within the scope of her employment during that time, the Court imputes Ms. Crowfield's presumptive negligence to Defendant.

Finally, a defendant may rebut the presumption of negligence by showing that the person violating the statute "did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law."  Cal. Evid. Code § 669(b)(1).  Defendant adduced no such evidence.  Defendant is thus liable for damages proximately caused by Ms. Crowfield's negligence.

**B.    Damages**

1.    <u>Medical Care</u>

Plaintiff is entitled to recover for reasonably necessary medical care attributable to the Collision. <u>Hanif v. Housing Authority</u>, 200 Cal. App. 3d 635, 640 (1988).  Here, based on the testimony of Plaintiff's medical experts Dr. Devin Binder and Dr. Fardad Mobin, the ultimate severity of Plaintiff's condition would not have emerged without the Collision.  Ex. 45 ¶ 25; Ex. 46 ¶¶ 16-19.  Plaintiff had some degeneration prior to the Collision, but the Collision exacerbated his spinal condition and rendered those degenerative problems symptomatic.  Ex. 46 ¶¶ 18-19.  This aligns with Plaintiff's credible testimony that he did not have any back pain prior to the Collision but experienced an onset of back pain soon after its occurrence.  Ex. 49 ¶ 24.  As a result, the following medical care was attributable[4] to the Collision:

---

[4] Defendant argued, and Defendant's medical experts posited, that Plaintiff's condition was unrelated to the Collision.  Def. United States of Am.'s Closing Arg. 7:19-22, ECF No. 133; <u>see generally</u> Exs. 145-146.  Specifically, Dr. Raymond Hah and Dr. Isaac Yang testified that the August 12, 2017 MRI revealed an absence of trauma to the surrounding bone which, in turn, signified an unlikelihood of trauma to the spinal discs.  Ex. 157 ¶ 28; Ex. 158 ¶¶ 20-21.  The doctors suggested that Plaintiff merely exhibited mild degenerative symptoms typical for a person of his age and occupation.  Ex. 157 ¶ 28; Ex. 158 ¶ 10.

While Defendant's medical experts opined that injury to the bone typifies disc herniation resulting from trauma, they did not rule out the possibility that disc herniation resulting from trauma could materialize absent trauma to the bone.  <u>See</u> Day 1 Tr. 110:18; Day 2 Tr. 76:18-22.  In fact, when confronted with the question of causation on cross-examination, Dr. Hah and Dr.

1    -    Emergency room services

2    -    MRI scans

3    -    Physical therapy sessions

4    -    Epidural steroid injections

5    -    Consultations with Dr. Binder

6    -    TLIF surgery

7         Furthermore, Plaintiff's medical care was

8    reasonably necessary.[5]  The conservative treatment—

9    namely, the medical consultations, physical therapy, and

10   epidural injections—was a reasonable measure in an

11   attempt to alleviate Plaintiff's pain.  Day 1 Tr.

12   104:12-22, 131:11-18.  Moreover, contrary to Defendant's

13   position, a TLIF was a reasonably necessary surgery for

14   Dr. Binder to perform given the MRI scans, the

15   ineffectiveness of conservative treatment, and

16   Plaintiff's symptomatology.  Ex. 45 ¶¶ 8-13; Ex. 46 ¶

17   15.

18        2.   Plaintiff's Compensation for Medical Care

19        With respect to Plaintiff's monetary recovery for

20   medical services, the amount recoverable is "the lesser

21   of (1) the amount paid or incurred for past medical

22

23   Yang displayed notable incertitude about the causal connection

24   between the Collision and Plaintiff's degenerative pathology.
     Day 1 Tr. 110:18-111:1, 111:6-18, 120:12-13, 130:13-2.

25        [5] Although the parties stipulated to the admission of
     certain medical records—specifically, those pertaining to

26   Plaintiff's visits with Dr. Shi and Dr. Chen—none of Plaintiff's
     witnesses testified about these visits.  The Court cannot

27   ascertain whether the services rendered were reasonably necessary
     or attributable to the Collision.

28

7

expenses and (2) the reasonable value of the services." Corenbaum v. Lampkin, 215 Cal. App. 4th 1308, 1325-26 (2013).  The reasonable value is the fair market value,[6] or the amount that the provider "normally receives from the relevant community for the services it provides." Bermudez v. Ciolek, 237 Cal. App. 4th 1311, 1334 (2015). While billed amounts are relevant in the reasonableness inquiry, they are alone insufficient.[7]  See id. at 1338 (stating that "the amount incurred by an uninsured medical patient is not sufficient evidence on its own to prove the reasonable amount of medical damages").

The reasonable value of Plaintiff's medical treatment attributable to the Collision is as follows:

- Emergency room services - **$425.00**

- MRI scans – **$2,750.00**

- Physical therapy sessions – **$8,704.40**

- Epidural steroid injections – **$4,000.00**

- Consultations with Dr. Binder – **$11,000.00**

- TLIF and associated costs – **$39,500.00**

---

[6] As the California Supreme Court noted in Howell, "pricing of medical services is highly complex and depends, to a significant extent, on the identity of the payer.  In effect, there appears to be not one market for medical services but several . . . ."  Howell v. Hamilton Meats & Provisions, Inc., 52 Cal. 4th 541, 562 (2011).

[7] The determination of fair market value "will usually turn on a wide-ranging inquiry" involving additional evidence and expert testimony.  Bermudez, 237 Cal. App. 4th at 1330-31; see also Pebley v. Santa Clara Organics, LLC, 22 Cal. App. 5th 1266, 1275 (2018) (remarking that "the uninsured plaintiff also must present additional evidence, generally in the form of expert opinion testimony, to establish that the amount billed is a reasonable value for the service rendered").

1    These values derive from a dissection of the
2  respective analyses for each parties' experts.
3  Plaintiff, on the one hand, adduced evidence of the full
4  amount of his outstanding medical bills.  These amounts
5  are minimally probative in determining the reasonable
6  value of medical services, as they represent the
7  unilateral assignment of value by Plaintiff's respective
8  providers.  This concern is especially glaring for
9  services rendered by Dr. Binder, who was retained on a
10  lien.
11    On the other hand, Defendant proffered the expert
12  testimony of Lindsay Knutson, who opined on the fair
13  market value of Plaintiff's medical care.  In reaching
14  her conclusions, Ms. Knutson applied a multiplier to
15  data extracted from the Medicare Physician Fee Schedule
16  Database, a comprehensive source of information on fees
17  for medical services.  Ex. 159 ¶¶ 35-38.  Application of
18  the multiplier to the cost of the service, which was
19  identified by the pertinent Current Procedural
20  Terminology code, yielded the "reasonable value" of the
21  respective service.  Id.
22    The Court finds Ms. Knutson's methodology to be
23  more probative of the reasonable value of medical
24  services but nevertheless problematic.  While her
25  methodology more nearly pinpoints the reasonable value,
26  it concerns a singular "fair market value."  The Court
27  is not convinced that the relevant market for
28  Plaintiff's treatment is precisely aligned with the

market identified in Ms. Knutson's methodology.  That is, Ms. Knutson's methodology encompasses those rates negotiated by payers who may have more bargaining power than Plaintiff.  Accordingly, the Court does not adopt Ms. Knutson's conclusions but accords reasonable values for Plaintiff's medical services more closely tied to figures proffered by Ms. Knutson.

With respect to future medical care, Plaintiff is entitled to recover the reasonable value of reasonably necessary medical care that he is reasonably certain to need in the future as a result of the Collision.  <u>Cuevas v. Contra Costa County</u>, 11 Cal. App. 5th 163, 183 (2017); <u>see also</u> CACI 3903A.  As stated in the factual findings, Plaintiff is likely to require future care, including medical consultations, medications, and interventional pain management.  Application of the same principles used to calculate the reasonable value of Plaintiff's past medical services yields recovery for future medical expenses of **$10,800.00.**  <u>See</u> Ex. 159 ¶ 47.

3.  <u>Lost Wages</u>

A plaintiff may recover for lost wages, but such damages must not be speculative.  <u>Cantu v. United States</u>, No. CV 14-00219 MMM (JCGx), 2015 WL 4720580, at *32 (C.D. Cal. Aug. 7, 2015) (citing <u>Engle v. Oroville</u>, 238 Cal. App. 2d 266, 273 (1965)).

Here, Plaintiff missed twelve weeks of work due to the Collision.  Because Plaintiff earns $569.76 per week

as a truck driver, Plaintiff is entitled to recover **$6,837.12** in lost wages.[8]  In addition, the record reflects a minor diminution in Plaintiff's work-life expectancy.  Given his significant medical treatment, persistent back problems, and need for future treatment, it is more likely than not that Plaintiff's work-life expectancy is reduced by two years.  With expected annual earnings of $29,627.75, Plaintiff is entitled to recover **$59,255.50** in future wages.

The Court does not adopt the figure of 4.2 years suggested by Plaintiff's expert, Mr. Vega, because of Plaintiff's current medical status and ongoing vocational incentives.  That is, no physician has placed a work-related restriction on Plaintiff, and he maintains potent incentives to work.  Day 1 Tr. 78:15-80:4; Day 2 Tr. 18:19-19:3; Ex. 160 ¶ 42.

4.  <u>Noneconomic Damages</u>

In California, "[f]or harm to body, feelings or reputation, compensatory damages reasonably proportioned to the intensity and duration of the harm can be awarded without proof of amount other than evidence of the nature of the harm."  <u>Duarte v. Zachariah</u>, 22 Cal. App.

---

[8] Plaintiff's vocational economic analyst, Enrique Vega, testified that Plaintiff should recover an additional 26.9% of his earnings to account for fringe benefits.  Ex. 47 ¶ 16.  While 26.9% of earnings may represent the national average in fringe benefits, there is no evidence that this figure applies in Plaintiff's case.  Moreover, fringe benefits are reflected in Plaintiff's tax returns as an offset to his earnings.  Day 1 Tr. 82:14-18; <u>see generally</u> Ex. 24.

1  4th 1652, 1664-65 (1994) (quoting Restatement (Second)

2  of Torts § 912 (1979)).  Plaintiff's noneconomic harm is

3  meager but nevertheless existent.  Plaintiff adduced

4  minimal evidence of pain and suffering, and the

5  testimony of Maria Garcia, Plaintiff's partner, was

6  minimally probative on that point.  He has, however,

7  been rendered somewhat burdensome to his family and has

8  lost the ability to hike or travel as he did before the

9  Collision.  Plaintiff has suffered noneconomic harm in

10  the amount of **$40,000.00.**

11                **III.  CONCLUSION**

12      The Court awards Judgment for Plaintiff and against

13  Defendant in the amount of **$183,272.02,** plus costs.

14      **IT IS SO ORDERED.**

15

16  DATED: August 13, 2021          /s/ Ronald S.W. Lew

17                          **HONORABLE RONALD S.W. LEW**
                            Senior U.S. District Judge

18

19

20

21

22

23

24

25

26

27

28